Please be seated. Alright, I'll call the last case on the docket, case number 234058, Jacobs v. Salt Lake City School District. Good morning, your honors, and may it please the court. My name is Laura Henry and I represent the appellants EJ and HS through their respective guardians, as well as the Disability Law Center. Since the New Mexico Association case over 40 years ago, this court has affirmed the right of children with disabilities to assert claims of discrimination, even when that discrimination occurs within an educational context. The fundamental assertion in the appellant's amended complaint is that the Salt Lake City School District implements the IDEA in a way that is discriminatory and violative of the ADA and the Rehabilitation Act, because its hub policy predetermines educational placements for children with intellectual disabilities and cognitive impairments, requiring them to be assigned to self-contained placements that are located at select hub schools. The district court erred when it failed to analyze or consider this framework, and instead exclusively relied on, and in our view, drastically expanded, the holdings in Urban and Murray to preclude the entirety of appellants' claims. How are your claims distinct from Urban and Murray? Certainly, Your Honor. So I think there's several things, but the positive thing is that in Urban and Murray, those cases were steeped in an individualized analysis of the LRE for those individual kids. And the Murray court went to great lengths, in addition, to say the appellants there were not challenging the degree to which those students were being allowed to participate in the general education environment. They were only narrowly challenging the location of the services, and I think that is the fundamental distinguishing factor between Urban and Murray. Again, the analysis, we would argue, applied by the district court, precludes an individualized analysis for EJ, HS, and similarly situated students. I just wanted to have a better understanding of the practical implementation of the hub policy. So if a student's IEP team wanted to place them in a regular classroom, but they were, by the hub policy, sorted into, by the sorting mechanism, they were sorted into a certain category that directed the placement be in a hub school, would the IEP team not be able to make that placement individualized? Our position is no, because all students with intellectual disabilities and cognitive impairments, to the best of our knowledge, based on the facts asserted in the complaint, and without the benefit of discovery, are either essential elements or severe kids or academic support, quote, mild, moderate kids. And all of those kids go to a hub school. So once those placements, or that sorting occurs into those categories, there is then no opportunity for the IEP team to say, well, maybe this kid who is sorted into this particular category because of their disability could succeed in a general placement. They could not do that. The hub policy would prevent that. That is our allegation. That's the way we believe it works, yes. And that's really the essential difference you're saying, is that right from the get-go, your clients did not get individualized treatment because their symptoms put them into a cubbyhole or a peg that says you're going to go to a special entire program rather than getting potentially individual treatment. That's correct. That once a child, again, not a child with ADHD, not a child with dyslexia, and that's again the crux of our complaint, only a child with an intellectual disability or cognitive impairment where the IQ is implicated. And that's why the testimony of the special education director about the dividing line between these two classes, she was very clear that that is 70, that if you are above 70 and you still have a cognitive impairment, you are assigned to a mild-moderate class that is called academic support for purposes of the hub system. And if you are below 70, you are assigned to essential elements or a severe class placement. You alleged an equal protection argument as well? We haven't made constitutional claims, no. These are under the IDEA, ADA, and Rehab Act. What's the difference between your IDEA and ADA claims? Certainly. Well, I think with the IDEA, it has to do with a predetermination of placement that the IDEA guarantees that placements are to be individualized. You know, the Supreme Court in Andrew F. said a child's educational services have to be delivered in light of that child's unique circumstances. Excuse me. And we believe the hub system just precludes that analysis. I think the distinguishment between the ADA and the IDEA is that the claim with respect to the ADA and 504 is that this disparate treatment is because of the nature of their disability. There are other ways in which you could violate, you know, predetermination or a failure to provide individualized services that don't rely on, you know, being subjected to a discriminatory policy based on disability category. And I think, in fact, that's the way most IDEA cases function. You know, there's a dispute about whether or not an IEP team just predetermined an individual placement. So I think that's the difference between those claims. Thank you. Well, what would you say if the school district said, we think your child is disabled because of an intellectual shortfall. We don't know what we're going to do with him or her. We're going to do an analysis of what they need best. They then do an analysis, and they say, OK, we've determined that they need this kind of service and that we cannot offer it on an individualized basis. We can only offer it on a collective basis, kind of equivalent of a magnet school at a concentrated school, at a HUD school. And so that's where we're going to send your kid. Would you have any problems with that approach if that was done? I'll try to answer as directly as I can, which is to say I think it would really depend on what the service is, what the service package is. I think what we're saying here is that everything you would need to consider an individualized placement already exists at a neighborhood school. And so I think I would have to assume for purposes of this argument that what the district was saying was it was something totally not available to effectuate a general education placement at a neighborhood school. You know, I do think there's case law about like a very, you know, particularized behavior program or something like that that can't be, you know, proliferated everywhere that really needs to be at a particular location. And I think that the law sanctions that. That was a good answer, but let me make it a little bit harder. I mean, the prize for giving a good answer is you get another question. All right. What if what if they said, well, we think you need a certain kind of treatment? And yes, we could do that individually, but it's very expensive for us and it is beyond our budget. But there's a bunch of kids in the district that need that and we can administer it more efficiently at a HUD site. And so we want to take you there because we can't. We do not have the facilities to provide that kind of treatment individually that we can only afford to provide it collectively. Then what? I don't think that would be permitted under the IDEA because there are sort of specific CFRs that speak to, you know, placement decisions can't be made based on administrative convenience or sort of configure the configuration of the service system. So if that's sort of where it fell, I don't think that would be appropriate. I'm sorry if I'm still misunderstanding. No, no, no. I mean, it's important because it could be that the district did decide. I don't know how much into the detail the record will show, but they could conclude that there were specialized counseling treatments that they couldn't provide on a one-to-one basis. But, of course, that's all based on money constraint. And with enough money, you could do anything. So you're saying that if they come to you and say this needs a specialized kind of a treatment, unless they were to say it needs a collective treatment, that part of the treatment is interactivity with others with like disabilities, that that's an essential part of the treatment. Then I suppose you could really justify a HUD situation. But that didn't happen here. Correct. And I want to just be clear that the record doesn't reflect that there is anything special about HUD schools. And I think that's a really important fact to keep in mind, that if you look at the information that was presented in the PowerPoint, the special education director, in fact, says we at Salt Lake City School District have had a historic problem with LRE, or the least restrictive environment. Which I think the reasonable inference of is that these kids, which are kids with intellectual disabilities and cognitive impairments, have for a long time not had the benefit of an individualized analysis, because that is what LRE rests upon. And so if there was an acknowledgment of that in the policy or the presentation, laying out this policy, I think it's difficult to conclude that there's anything particular, because that would have been the time to say, here's exactly why we have to do this. And instead they said, you know, we want to stop kids from moving all over the district, which is fine, but it doesn't explain what the service is or what's necessary about the HUD schools to send whole swaths of kids with disabilities. And I think that that's concerning. But you think that the decision of where to send these two children was made strictly on the basis of their IQ rating, pretty much? And the nature of their disability, yes. And so it did not offer them an individualized program? Correct. But what if they had looked at it and said, we're going to now work with you, we're going to give an individual treatment program for you, and an IEP, and, you know, we can only do that at this remote school. What would you say if they said that? I think if the analysis aligned with what happened in Murray, wherein that child was allowed to attend their neighborhood school, it looked like they were struggling to make progress, then the IEP team reconvened and said, hey, we've got to do something about this. That's the appropriate process to follow. Of course you can remove a student when they're not making progress in the general education environment, but you can't pre-assume that a student won't make progress in a general education environment simply because of their IQ score or disability designation. And I think that is what's happened here. That's what the amended complaint alleges. And the record just doesn't have evidence to the contrary. What do you want us to do in this case? You want us to reverse the dismissal? Correct. Do you want to go back to the district court to do the record review or to continue your procedural claims? Yes. As they've happened. Correct, Your Honor. I think we would ask for a reversal. We'd ask for clarification on Urban and Murray, because I think without that, you know, it's hard for the district court to, I think, rule in a way that is appropriate. And I think also direct the court to review claims of discrimination because, again, there was sort of just no real analysis of that in the decision below. If it's okay, I'll reserve the rest of my time. Sorry. Yeah, go ahead. Thank you.  May it please the court. My name is Joan Andrews, and I'm here today on behalf of the defendant's appellees, Salt Lake City School District and its Board of Education, for the sake of brevity, I'll just refer to as the school district. Your Honors, I respectfully submit that the district court correctly granted the school district's motion to dismiss the three claims filed by plaintiffs under the IDEA, ADA, and Section 504 of the Rehabilitation Act, and that its decision should be upheld by this court on appeal. The district court's decision correctly recognized that plaintiff's claims were not cognizable and should not proceed under the longstanding precedence of Murray and Urban. These two cases clearly and unequivocally establish that children with disabilities do not have a right to attend their neighborhood schools, regardless of whether the claim is couched as one under IDEA 504. But they have a right to individual consideration. They do. And that's entirely different. Murray and Urban didn't say that that can't be a circumstance that can be considered, that you don't have to consider that at all. They just said you don't have a right to it. I think you're absolutely right, Your Honor. And I think, you know, part of the challenge with this case is that a fair reading of plaintiff's amended complaint actually reveals that this is all about neighborhood schools and not really about LRE. Yes, it's a different way of saying that location and placement. Correct. So your position is the district court was correct in understanding this claim to be about the location of services, not the placement of the child. Exactly, Your Honor. And, you know, Murray, which was a location case, recognized that, yes, the right to be educated in the least restrictive environment is one of the most fundamental aspects of the IDEA. And Murray said this is not an LRE case and we don't even need, in Murray, to establish a standard for LRE. This court did not really adopt a standard for LRE until 2004 in the NEBO case. But when we look particularly, I think, at the plaintiff's claim for relief in their first amended complaint, the request was to order Salt Lake City School District to make individualized placement decisions for each of the placements based on their IEPs and meaningfully consider the full continuum of placement options and supplementary aids and services necessary to place them at their neighborhood schools. And that, to me, is key. And when we also look at the first amended complaint, we look at the kinds of issues and complaints that are made about the inability to attend neighborhood schools. Those are not the kinds of rights that any of these statutes are particularly concerned about. The IDEA and other statutes are concerned about the ability of students to be educated in a general education classroom except where their needs, as determined on an individualized basis, require something different. So once they are, a determination is made by the IEP team that their needs require removal. But isn't that just the problem here? It's that the decision isn't being made by the IEP team. It's being made by the predetermination that the HUD policy directs. That's the allegation, but these... Let me pause just a minute right there. How is this case coming before us right now? What's the procedural status? Yes, so it's a review of a motion to dismiss. And doesn't a motion to dismiss deal with allegations? So when you're dismissing the comments about isn't this what happened, you say, well, yeah, that's the allegation, but shouldn't the sentence end at, yes, that's the allegation, period? Yes, Your Honor. I understand your point, and let me try to respond to that, which is, you know, that the district court ruled as a matter of law that the first amended complaint fell under the purview of Murray and Urban. So I think that is the overarching legal question. And, no, we're not getting into the merits of the factual allegations, but rather looking, did the first amended complaint plausibly allege violations that should, in fact, be heard on a more factually intensive basis? Or was the district court correct in saying, as a matter of law, these fall under the Murray-Urban purview and can be dismissed without getting to the merits? And we think the district court was correct. The complaint does contain plenty of allegations about how this should work and how placement decisions should work, not location decisions. And I guess I'm struggling to see why you don't think that that sufficiently alleges procedural violations. Yeah, because I think that ultimately, again, going back to the idea that what they are seeking is placement in a neighborhood school. They're seeking consideration of placement in a neighborhood school. They're not demanding it. That's the difference. They want it to be considered. Interpreted in the light most favorable to the allegations, it could just be a way of saying neighborhood school is just a proxy for generalized placement. If it had said generalized placement, would you have the same concern? You actually just anticipated where I was heading, which is I think that would be a different case. Because what these complainants are talking about is walking to school with their neighbors, going to school with their siblings. These are things that, if it were a general education classroom, might not be the same. It's interesting reading the briefs. It's clear that what they're interested in is the neighborhood school. But the legal issue they're presenting to us is that not that. Because they know that that's really kind of – they don't have a right to it, although it can't be precluded. But the right that they're asserting is the one we have to deal with, the legal issues, not their private motivations. And the legal issue they're asserting is that they got pigeonholed without an individualized treatment plan, by their IQ levels, and that meant that they were denied that individualized treatment that they're entitled to. And so that's the only issue we really have to address. Yeah, and I think that the district court did fairly consider that, and that its ruling can be upheld by this court on the basis of those Murray and Urban precedents. Could you speak a little bit to something that I need clarity on from your briefing? I thought the school district's position was it wasn't clear that there were individual IDEA claims in this case, and I'm not sure I understand how that can be. Yeah, so I think it goes to how it has been framed, actually, by the plaintiffs here, which is that it does appear to be that the individual claims are very much secondary. And when we look at, again, the relief that was requested, it wasn't really specific to EJ or HS, but goes more to we want you to order that the hub policy be enjoined, and that you change systematically the approach to the handling of these cases. And so the individualized elements, again, were really no specific allegations regarding how – Isn't it a procedural violation? Weren't they just alleging that procedurally there were violations in how this was handled? Isn't that really what it is? So, well, I mean, I think it depends, right? So when we talk about IDEA violations, we've got procedural and substantive, and so certainly the LRE requirement I think would be a substantive mandate of FAPE. A procedural issue would be were we required to do a written prior notice before changing the location of the program itself, which was, in fact, addressed by the administrative hearing officer in EJ's due process hearing below. So we had both procedural and substantive issues that were addressed. So the failure to consider individual circumstances with respect to placement would not be a procedural issue? If it were to result in a substantive denial of FAPE, which I think ultimately is – Is that what they're asking? I'm not 100 percent sure, Your Honor, in terms of sometimes where that difference in IDEA between a procedural violation and a substantive violation can be a little bit blurry. But notwithstanding that dividing line, I think clearly the issue would be whether or not that violation has resulted in a denial of FAPE, one element of which is certainly being educated in the general education curriculum with non-disabled peers to the greatest extent possible, which, again, we think that the hearing officer did address below but has not been made any kind of focal point of the issues on appeal to the district court. My understanding was that they're arguing a systemic challenge in order to justify the fact they didn't have a procedural default when they didn't raise all of these issues uniquely with the hearing examiner because they say the hearing examiner can't give us a ruling on large legal interpretations that are systemic challenges. So I think they're arguing that in order to address the fact they didn't raise this in the court. Right. And to that point, that certainly is an argument that has been raised. And I do think that the facts and circumstance of this case can definitely be distinguished from those other systematic type cases. So in Murray, for example, and Urban, we're able to distinguish, well, Urban actually distinguished the New Mexico Association case because it said, listen, that, you know, New Mexico Association, very interesting factual circumstances, right? But that went back to the statewide failure to adopt IDEA, really. And so it was extremely broad. And the court, I think, very well justified, said these are not the kinds of things that can be addressed on any kind of individual basis. This is a fairly systemic claim, too, that you have a HUD system, systemly. Your system does that analysis by HUD, and that circumvents the individualized treatment program. But I don't think that these cases can only be addressed on a systemic basis because, you know, we have two plaintiffs here, but these, and this goes to Urban as well, these cases are exactly the kinds of issues that need to be addressed on an individualized basis with the benefit of a full administrative record below. Because, you know, what is the district court supposed to review? It's supposed to review the administrative record, not act as its own arbiter of what is in fact appropriate for children and the degree to which it is appropriate for them to be mainstreamed. They need the benefit of that administrative record from a hearing officer, which then is entitled to that prima facie presumption of correctness. And without that, the district court is just making things up as it goes along. Are they correct or incorrect in saying that if we had, what we're really challenging here is the initial determination under their HUB based on our test scores, and we think that that general policy that applies to all kids is wrong, they say if they had raised that to a hearing examiner, the hearing examiner would say, I can't rule on that, that's too systemic. And so they're now saying, well, that's why we didn't exhaust, that's why we didn't raise it there, because it is the kind of claim that can only be brought in district court. Is that right or wrong? I don't, I think it's right that in fact the hearing officer did say, I'm not going to consider your systemic claims, but I think that each individual child should bring an administrative action there, because only with the benefit of that administrative record can we determine whether or not in fact an IEP team did make a decision regarding LRE and what factors went into that. In district court, don't they have the ability to take additional evidence, and wouldn't this be the type of case where you could take additional limited evidence about whether there was this categorical type of action on the part of the school district, and couldn't it do that and resolve it based on that, on a motion essentially? The district court certainly does have authority to take evidence, but I would posit that the limited amount of evidence that they should take is, these are fact-intensive, evidentiary-intensive decisions. The record from this lower court, the hearing officer decision, is voluminous, four days of hearing about issues related to this child's individual needs. I don't think that is intended to be the structure and the role for the district court on an appeal of these, and so I do think that each of these cases should be exhausted rather than being heard on a systemic level. And I see that I'm over, and I'm happy to take any additional questions, but I thank you for your time today. Thank you. Is that all? Yes, just a couple of, if I can make this work, just a couple of quick points that I think are critical. One, in terms of the relief that we requested, I think if this were a case that does, as Appellee suggests, that was only about location, here's how the relief would look. It would say, we'd like you, district, to put an essential elements class and an academic support class in every school in the district. That's the opposite of what my clients want. They're saying, please don't pre-assign me to that based on my IQ score. Will some kids with a fair reading and assessment and individualized look end up there? Sure, but they're entitled to that individualized look under both the ADA and the Rehab Act and the IDEA. And I think the other point that I wanted to make about exhaustion in the hearing officer's decision is that, one, the hearing officer in EJ's case specifically said, I won't take evidence on the HUB system. You can't talk about the HUB system. I won't look at any similarly situated students. So to say that each student affected by the HUB system should come doesn't provide the kind of relief you need if you're not able to have the kind of evidentiary hearing that would lead to relevant evidence that affects your case. I think as a final point, I would say, without the ability to at least challenge the HUB system on the merits, there is no world in which EJ or HS or any of the other kids with intellectual disabilities and cognitive impairments in Salt Lake City School District will have a chance to the process that they are entitled to under the law. It won't matter how much progress they make on an IEP goal or a general education setting because their IQ isn't going to change. And that has to be wrong. And with that, I would ask that this court reverse. Thank you. Thanks to both counsel. You presented your cases very well today. We appreciate your argument. Counsel are excused. The case is submitted, and the court will be adjourned until the next call.